Parker C. J.
delivered the opinion of the Court. This 1 is somewhat of a difficult question, and it seems there are no authorities to assist us in coming to a decision, for in the elabo rate argument submitted in writing, none are cited, except to a point which is sufficiently clear, viz. that payment to an agent, while his authority continues, and without prohibition from the principal, shall be a discharge against the principal. The argument on both sides consists of reasoning from well known principles, and an application of those principles to the case submitted ; and we must take the same course to arrive at a decision.
First, then, it is clear from the facts stated, that Williams, in the sale of the shares, was merely the agent of the defendants. He was their factor in London, and they sent him these shares to sell on their account. He sold for cash, and credited them in his books for the proceeds. The sale was made in such form as to enable the purchaser to sell the same shares by delivery only of the documents which he had received : *46 and the documents were sent on to enable the factor to make such a sale. They were not remitted to him, like a bill, to take to his own account, but as a means of raising money for the use of the defendants. Williams might have sold them without any personal guaranty or liability, if he could have disposed of them on those terms. If he might have taken them to his own account, he did not, for the sale was made on May 10, 1825, and on the 18th of that month he informs the defendants by letter, that he had sold on their account, and he renders an account of his agency.
He undertakes to guaranty the genuineness of the documents, and for this he charges a commission, and he stipulates for the payment of all dividends after January 1, 1825. This was necessary, as those dividends remained payable to the defendants until the record of ownership should be changed in the bank; but this seems to be an independent obligation on his part, which does not affect the liability of the defendants ; for such dividends as they might receive, by virtue of their credit on the books of the bank for the same, the bank knowing of no proprietor but them, until a transfer should be made on the books, would certainly be received by them to the use of the purchasers. Suppose that on the failure of Williams the first dividend had not been remitted to him, could it be doubted that the bona fide holders of the shares could recover the dividend received by the defendants ? Did they not in law receive it to the use of the owners of the shares ? By virtue of the contract of sale made through their agent, the defendants had parted with the shares and the dividends accruing; they became in equity the agents of the purchaser in receiving the dividends, and if they had refused to receive, as the purchaser would not, by the rules of the bank, be able to obtain payment without their agency, I think an action would lie against them for this refusal or neglect, because when they sold the shares, with the dividend on and accruing, and their agent in the sale had given a year for the transfer in the books, they undertook by implication to receive for the purchaser what he could not receive but through them. •
Does the contract of the factor with the purchaser to guaranty the stock and the payment of the dividends, destroy this *47 liability of the principals to the purchaser ? I do not see that it can. It is merely an assurance that the defendants will do their duty, and such assurance was probably necessary to a sale for the full value, as the vendors were strangers, living in a foreign country.
Then the question remains, whether Williams is to be considered as agent for the purchasers, so that a remittance to him of the dividend will discharge the defendants ; and I think this is settled by the terms of the contract made by Williams and accepted by the plaintiffs. He promises to be accountable for such dividends as may become due and be received by him or his agent, from the 1st of January, 1825, until transfer. Why is not this an agreement on the part of the plaintiffs, that Williams shall receive, or employ some one to receive ? And if so, the defendants having had notice from Williams that he was to receive, accompanied with a request that the defendants would obtain the dividends, stating that he should pay them, a remittance until prohibited must be a payment as it regards the defendants. And it is to be considered, that the defendants were wholly ignorant who were the purchasers or in whose hands the certificates were, so that they could not remit to any person but Williams. After the bankruptcy of Williams, and notice to them who the owners were, they were bound to pay to the owners the future dividends, and they have done so.
It is agreed that the remittance made by the defendants to Williams in September and October, 1825, was for this dividend and for other mercantile uses. If Williams was the agent to receive., it cannot make a difference, that there was no specification of the dividend as an object of the remittance. The defendants being then creditors of Williams, he could have applied the remittance to this object. If they had been indebted, a particular appropriation might have been necessary.
We think on this last ground the defendants are discharged, and that the plaintiffs must look to the estate of Williams.
It is suggested in the argument for the plaintiffs, that the payment by the defendants to the plaintiffs of the dividend last received, which was after the bankruptcy of Williams and after notice of the plaintiffs’ right, is a recognition of the right *48 of the plaintiffs. That right cannot be disputed after notice to the defendants ; but before that, to whom should the de fendants have remitted, if not to Williams ? Certainly to no body ; and yet they were requested by Williams to remit to the plaintiffs, he having engaged to pay. We cannot imagine a stronger case of authority to receive, than Williams had, by virtue of the written acknowledgment of the plaintiffs in their receipt. They looked only to him for the dividends, and in consequence of this arrangement and of the notice by Wil liams to the defendants, the remittance was made.

Plaintiffs nonsuit: